IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS QUINN and THERESA      )
QUINN, individually and on    )
behalf of a class of          )
similarly situated persons,   )
                              )
          Plaintiffs,         )
     v.                       )    Case No. 16 C 2021
                              )
SPECIALIZED LOAN SERVICING,   )
LLC,                          )
                              )
          Defendant.          )
                              )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Thomas and Theresa Quinn ("the Quinns") have
brought this suit, individually and on behalf of a purported class,
against Specialized Loan Servicing, LLC ("SLS") for violations of
the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692
*et seq.*, and the Illinois Consumer Fraud and Deceptive Practices
Act ("ICFA"), 815 ILCS 505/1 *et seq.* SLS has moved to dismiss the
complaint and, in a separate motion, has moved to strike certain of
the complaint's class action allegations. For the reasons discussed
below, the motion to dismiss is granted in part and denied in part,
and the motion to strike is denied.

I.

In November 2008, the Quinns obtained a loan from Cherry Creek
Mortgage Company for the purchase of their home. After experiencing

a series of misfortunes, they defaulted on their mortgage payments.
The loan was subsequently transferred to Bank of America ("BofA"),
and the Quinns retained The Residential Litigation Group ("RLG") to
negotiate the loan dispute with BofA. In July 2012, BofA filed a
foreclosure action against the Quinns. To act as their attorneys in
the foreclosure proceedings, the Quinns retained Consumer Legal
Group, P.C. ("CLG").

At some point between September and November 2013, servicing
of the Quinns' loan was transferred from BofA to SLS. The amended
complaint alleges that at some point around September 2013, SLS
began sending them correspondence demanding payment on the loan.
SLS also began sending "field inspectors" to the Quinns' home, who
stationed themselves conspicuously outside of the Quinns' residence
and took pictures of the premises. Beginning in March 2015, the
inspections became more frequent. In some cases, inspectors visited
the Quinns' home as many as three times in a given month. This
caught the attention of the neighbors and prompted questions that
caused the Quinns humiliation and embarrasement.

In November 2015, an inspector visited the Quinns' residence
while they were away and left a "door hanger" that included a slip
of paper stating: "AT THE REQUEST OF SPECIALIZED LOAN SERVICE, AN
INDEPENDENT FIELD INSPECTOR CALLED ON YOU TODAY. PLEASE CONTACT
SPECIALIZED LOAN SERVICING AT 1-800-306-6062. THANK YOU." Compl. ¶
39. In December 2015, an inspector left another hanger containing

essentially the same message on the Quinns' door. When the Quinns dialed the phone number provided in the message, they reached SLS's collections department. There was no phone option for calls pertaining to home inspections.

In January 2016, an inspector visited the Quinns' home once again. At the time, the Quinns' daughter was home alone and she became frightened after the inspector began banging on the door. She called the Quinns but they felt helpless and could do nothing more than remain on the phone with her until the banging ceased. When the Quinns arrived at home, they found another door hanger like the first two.

The Quinns' amended complaint asserts several causes of action under the FDCPA, some individually, and some on behalf of a proposed class. Count I is a class claim alleging that SLS violated FDCPA § 1692c(a)(2) by communicating with the Quinns directly despite its awareness that they were represented by counsel; Count II is a class claim alleging that SLS violated FDCPA § 1692e by using false, deceptive, or misleading representations in attempting to collect a debt; Count III asserts an individual claim alleging that SLS violated FDCPA § 1692d by engaging in harassing, oppressive, or abusive conduct in attempting to collect a debt. Based on essentially the same conduct as that alleged in Counts I-III, the Quinns assert claims under the ICFA, both on behalf of the class (Count IV) and individually (Count V).

SLS has moved to dismiss all of the claims, and has also moved to strike the class action allegations from Counts I and IV. I address the motion to dismiss first and then turn to the motion to strike.

## II.

A motion to dismiss pursuant to Federal Rule 12(b)(6) challenges the sufficiency of a complaint, not its merits. *See, e.g.*, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating the complaint's sufficiency, I must "construe it in the light most favorable to the nonmoving party, accept well-pled facts as true, and draw all inferences in [the plaintiff's] favor." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quotation marks and brackets removed).

## A. Section 1692c(a)(2)

Count I asserts a class claim under § 1692c(a)(2). "The FDCPA § 1692c(a)(2) states that a debt collector may not communicate with a consumer, in connection with the collection of any debt, if the debt collector knows that the consumer is represented by counsel." *Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 602 (7th Cir. 2016). It is well settled that § 1692c(a)(2) is violated only where the debt collector has actual knowledge of the debtor's legal representation. *See, e.g.*, *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). Moreover, the debt collector must have knowledge not just that the debtor is represented by counsel

4

generally, but that he or she is represented in connection with the specific debt at issue. *See, e.g.*, *Miller v. Allied Insterstate, Inc.*, No. 04 C 7126, 2005 WL 1520802, at *4 (N.D. Ill. June 27, 2005) (citing cases).

SLS argues that the Quinns have failed to allege that it had actual knowledge that they were represented by counsel. I disagree. The amended complaint asserts that when SLS began servicing the Quinns' loan, the prior servicer provided SLS with records that included a notice that the Quinns were represented by RLG vis-à-vis the loan dispute with BofA. The amended complaint also alleges that SLS received copies of the foreclosure pleadings identifying CLG as the Quinns' attorney for purposes of the foreclosure action. Additionally, the Quinns allege that SLS received and responded to discovery requests from the Quinns' foreclosure counsel. These allegations plausibly assert that SLS knew that the Quinns were represented by counsel when it attempted to contact them.

Against this, SLS cites a trio of cases from the Middle District of Florida: *Wolhuter, et al v. Carrington Mtg. Servs., LLC, et al*, Case No. 8:15-cv-00552 (M.D. Fla. Oct. 18, 2015); *Nordwall v. PNC Mortgage*, No. 2:14-CV-747-FTM-CM, 2015 WL 4095350 (M.D. Fla. July 7, 2015); and *Wright v. Select Portfolio Servicing, Inc.*, No. 8:14-CV-2298-T-30TGW, 2015 WL 419618 (M.D. Fla. Feb. 2, 2015). In each of these cases, the plaintiffs alleged that the debt collectors had knowledge of their representation by counsel because

the debt collectors had received notice of the plaintiffs'
attorneys' appearances in foreclosure actions. And in each case,
the courts held that the debt collectors' knowledge of the
plaintiffs' representation in the foreclosure proceedings was not
sufficient to establish knowledge that the plaintiffs were
represented by counsel for other debt-collection purposes. *See,
e.g.*, *Wolhouter*, No. 8:15-cv-00552 at 10; *Nordwall*, 2015 WL
4095350, at *3; *Wright*, 2015 WL 419618, at *5.

These decisions are inapposite. The plaintiffs in these cases
were represented by a single firm or attorney, and the
representation was limited to foreclosure proceedings. Here,
however, the amended complaint alleges that the Quinns were
represented by counsel -- and that SLS knew they were represented
by counsel -- in connection with debt-collection matters beyond the
foreclosure action. At this juncture, I am required to take the
amended complaint's allegations as true and to construe them in the
light most favorable to the Quinns. Accordingly, I deny SLS's
motion to dismiss Count I of the amended complaint.

**B.    Section 1692e(10) & (11)**

Count II of the amended complaint asserts a claim under §
1692e of the FDCPA, which prohibits debt collectors from "us[ing]
any false, deceptive, or misleading representation or means in
connection with the collection of any debt." 15 U.S.C. § 1692e. The
Quinns claim that SLS violated subsection 10 of the statute, which

prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10); and also subsection 11, which requires debt collectors "to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," 15 U.S.C. § 1692e(11).

SLS contends that Count II fails because: (1) the Quinns have failed to allege that they suffered an injury in fact as a result of the § 1692e violations and therefore lack standing to bring the claim; (2) the inspectors' communications were not made "in connection with the collection of any debt"; and (3) the inspectors' communications were not materially misleading. As discussed below, none of these arguments carries the day.

**1.  Standing**

"Article III standing has three elements: (1) an 'injury in fact,' that is, 'an invasion of a legally protected interest which is ... concrete and particularized, and ... actual or imminent'; (2) a causal connection between the injury and the challenged conduct, meaning that the injury is 'fairly traceable' to the challenged conduct; and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

7

SLS argues that the Quinns lack standing to assert their § 1692e claim[1] because they have failed to allege that they suffered an injury in fact. This argument is based on the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). There, the plaintiff filed a class action under the Fair Credit Reporting Act ("FCRA") after learning that searches on Spokeo's web site returned inaccurate information about him. Among other things, the site incorrectly reported that the plaintiff was married, had children, was relatively affluent, and held a graduate degree. *Id*. at 1546. Spokeo argued that the plaintiff lacked standing to bring the claim because he had not alleged any injury as a result of the inaccuracies.

The Ninth Circuit rejected Spokeo's argument, concluding that the plaintiff had asserted a sufficiently particularized harm since the rights allegedly violated were *his* statutory rights, and because the plaintiff had a personal rather than collective interest in the handling of his credit information. *Id*. at 1546. The Supreme Court reversed, holding that the Ninth Circuit should have considered not only whether the plaintiff's injury was particularized but also whether it was sufficiently concrete. The Court explained that certain violations of the FCRA (e.g., inaccurately listing an individual's zip code) might not

---

[1] The standing argument appears to be directed only at the Quinns' claims under § 1692e.

necessarily result in any concrete harm. The Court therefore remanded the case to the Ninth Circuit with instructions to consider whether the violation of the statute was alleged to have resulted in an injury sufficiently concrete to confer standing. *Id*. at 1550.

SLS argues that *Spokeo*'s holding regarding the plaintiff's FRCA claim applies with equal validity to the Quinns' FDCPA claim. According to SLS, even if it committed a technical violation of § 1692e by leaving the door hangers at the Quinns' home, the Quinns have not alleged that they experienced any concrete harm as a result. Instead, the amended complaint alleges only that the door hangers induced the Quinns to place a phone call to SLS. SLS insists that this amounts to nothing more than a procedural violation of the statute, which, under *Spokeo*, is not a sufficiently concrete harm to meet Article III's injury-in-fact requirement.

I am unpersuaded. As an initial matter, despite SLS's suggestion to the contrary, *Spokeo* does not stand for the proposition that a procedural violation of a statute alone can never give rise to an injury in fact. On the contrary, the Court specifically observed that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and that in such cases a plaintiff "need not allege any *additional* harm beyond the one Congress has

identified." *Id.* at 1549. As examples of the latter violations, the Court cited cases in which plaintiffs alleged that they had been denied information under the Freedom of Information Act and the Federal Election Campaign Act. *Id.* at 1549-50 (citing *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989), and *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998)). Thus, while *Spokeo* held that a procedural violation of the FRCA does not necessarily give rise to an injury in fact, it does not follow that the same holds true of violations of other statutes, including the FDCPA.

In fact, a number of courts have already confronted *Spokeo*-based standing challenges in FDCPA cases and have rejected the argument that SLS asserts here. For example, in *Mahala A. Church v. Accretive Health, Inc.,* No. 15-15708, --- Fed. App'x. ---- (11th Cir. July 6, 2016), the plaintiff asserted claims under §§ 1692e(11) and 1692g of the FDCPA, alleging that the defendant had sent her a letter stating that she owed a debt to a hospital without disclosing that it was a debt collector. *Id.* at *3 & n.1. Although the plaintiff claimed that the letter upset her, she did not allege any injury beyond the violation of the statute itself. Nevertheless, the Eleventh Circuit held that the plaintiff "had a right to receive the FDCPA-required disclosures" and that "she has sustained a concrete -- *i.e.*, "real" -- injury because she did not receive the allegedly required disclosures." *Id.* at *3. The court observed that the violation of the plaintiff's "right to receive

the disclosures is not hypothetical or uncertain," and that "[w]hile this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete." *Id*. Notably, the court also explicitly rejected the contention advanced by SLS here that the plaintiff had alleged a mere "procedural violation" of the statute. Rather, the court held, "Congress provided Church with a substantive right to receive certain disclosures and Church has alleged that Accretive Health violated that substantive right." *Id*. at *3 n.2.

Based on essentially the same reasoning, district courts in this Circuit have rejected similar challenges to standing based on *Spokeo* in FDCPA cases. *See, e.g.*, *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, *4 (N.D. Ill. July 11, 2016) (plaintiff's allegation that defendant failed to disclose information required under FDCPA § 1692g was sufficiently concrete under *Spokeo* to confer standing); *cf. Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) (declining to stay proceedings in FDCPA case pending Supreme Court's decision in *Spokeo* because "Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute") (quoting *Sterk v. Redbox Automated Retail, LLC,* 770 F.3d 618, 623 (7th Cir. 2014)).

I find the reasoning of the latter cases persuasive. Accordingly, I conclude that SLS's alleged failure to provide the Quinns with information required under the FDCPA constitutes a sufficiently concrete harm for purposes of Article III standing.

## 2.  The Purpose of the Communications

SLS next argues that Count II fails because the communications and activities on which the claim is based fail to meet the statutory requirement that they be made "in connection with the collection of any debt." SLS argues that the door hangers cannot be regarded as having any relation to debt collection because they made no reference to the Quinns' mortgage account and contained no demand for payment. In addition, SLS contends that when viewed as a whole, the amended complaint "makes clear that the purpose of the property inspections -- including the door hangers -- was to confirm the condition and vacancy status of the property." Def.'s Mem. Mot. to Dismiss at 1. SLS contends, for example, that the Federal Home Loan Mortgage Corporation's servicing guidelines not only authorize, but require, SLS to conduct inspections of properties that secure delinquent mortgages.

There is no "bright-line rule ... for determining whether a communication from a debt collector was made in connection with the collection of any debt" for purposes of the FDCPA. *See, e.g.*, *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). Rather, the Seventh Circuit has held that making this

determination requires a "commonsense inquiry" that takes account of factors such as whether the communication at issue includes a demand for payment, the nature of the parties' relationship, and the overall purpose and context of the communications. *Id*. at 385.

Taking these factors into consideration, the Quinns have sufficiently alleged that SLS's communications and activities were made in connection with the collection of a debt. For example, the Quinns allege that upon calling the number listed in the door hangers, they were presented with only two options: one for brokers, mortgage companies or attorneys, and one for consumers. The latter option led the Quinns directly to SLS's general collections service. The fact that the contact number gave the Quinns no option to speak to anyone regarding inspections casts doubt on SLS's contention that the purpose of the door hangers was solely related to inspection. The fact that the door hangers contained no demand for payment does not show that the communications were not made in connection with the collection of a debt. Rather, under *Gburek*, the absence of such a demand is only a single factor in the calculus. When viewed as a whole and construed in the light most favorable to the plaintiffs, the amended complaint plausibly alleges that the purpose of the communications was to collect a debt.

SLS also points out that the notation "9/17/13" is found on the door hanger document attached as an exhibit to the amended

complaint. According to SLS, this indicates that the door hanger was left on September 17, 2013, placing it outside the FDCPA's one-year statute of limitations. *See, e.g.*, *Gajewski v. Ocwen Loan Servicing*, No. 15-3849, --- Fed. App'x. ---- (7th Cir. May 25, 2016) (noting that the statute of limitations under the FDCPA is one year). However, even assuming that "9/17/13" refers to a date, there is no basis for the assumption that it represents the date on which the hanger was left on the Quinns' door (as opposed to, say, the date on which the document was created). The amended complaint specifically states that the hanger was left at Quinns' home in November 2015.

In sum, I conclude that the amended complaint sufficiently alleges that SLS's communications were made in connection with the collection of a debt, and that the communications at issue are alleged to have occurred within the FDCPA's limitation period.

### 3. Falsity & Materiality

Finally, SLS argues that the Quinns fail to state a claim under § 1692e because they have not alleged that SLS made any material misrepresentations. According to SLS, the amended complaint does not allege that the inspectors or door hangers "conveyed any information that would confuse the unsophisticated consumer of her rights under the FDCPA or the debt." Def.'s Mem. at 10. Rather, SLS maintains, the Quinns "knew their home was the subject of a foreclosure proceeding at all times relevant to the

14

claims," and they "do not allege that any of the information contained in the text of the door hanger is false or deceptive" since when they dialed the number provided, they were in fact connected to SLS. *Id*. at 11. Further, SLS argues, the Quinns do not "allege there is anything in the text of the door hanger which misrepresents or contradicts the terms or amount of a debt." *Id*.

These contentions misconstrue the gravamen of the Quinns' claim. Their contention is not that they were deceived by SLS's assertion of false statements; it is that they were deliberately misled into believing that the purpose of the inspectors' visits and communications was to conduct home inspections rather than to collect a debt. SLS insists that the Quinns' allegations on this point are implausible. For example, SLS argues that the Quinns "cannot plausibly explain why SLS's collections department would have an option for mortgage companies, attorneys, and brokers," and that they "cannot claim that there is a separate collections department for real estate professionals, or that SLS has only two departments." Def.'s Reply Br. at 9. However, these are challenges to the truth of the complaint's allegations and are inappropriate at the motion-to-dismiss stage.

For these reasons, I deny SLS's motion to dismiss Count II of the amended complaint.

**C.  Section 1692d**

Count III asserts an individual claim under § 1692d of the FDCPA, which prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. SLS argues that the claim should be dismissed because "snapping some photographs" and leaving door hangers at the Quinns' residence is not sufficiently threatening or intimidating to be actionable under § 1692d.[2]

Although "[c]ourts have ... dismissed claims filed pursuant to § 1692d as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor," *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006), "[o]rdinarily, whether conduct harasses, oppresses, or abuses [under § 1692d] will be a question for the jury." *Allen v. Bank of Am., N.A.*, No. 11 C 9259, 2012 WL 5412654, at *7 (N.D. Ill. Nov. 6, 2012) (alteration omitted) (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985)).

The facts alleged by the Quinns are sufficient to state a claim under § 1962d. Contrary to SLS's characterization, the amended complaint alleges that SLS did more than take pictures and leave door hangers at the Quinns' home. The Quinns allege that the

---

[2] SLS also argues that the claim fails because the inspectors' activity was not undertaken "in connection with the collection of a debt." Having already concluded for purposes of the Quinns' 1692e claim that this requirement has been met, it is unnecessary to revisit the issue for purposes of their § 1692d claim.

inspections took place with far more frequency than was necessary to ascertain that the property was not vacant, and that the picture-taking was conducted in a deliberately noticeable manner in order to harass and embarrass them. In addition, the amended complaint alleges that in one instance, an inspector banged on their door in such a way that it frightened their daughter and caused the Quinns emotional distress. Viewing the amended complaint in the light most favorable to the Quinns, they state a claim under § 1692d. *See, e.g.*, *McKinney v. Nationstar Mortgage, LLC*, No. 5:15-CV-637-FL, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016) (denying motion to dismiss § 1692d claim alleging that a field services agent monthly passed the residence, parked, snapped pictures of the plaintiffs' home, and "thence waltz[ed] up the Plaintiffs' front yard and [hung] a conspicuous door tag instructing the Plaintiffs to call their mortgage company, all in broad daylight for the neighbors to see"). Accordingly, SLS's motion to dismiss Count III is denied.

**D.  The Illinois Consumer Fraud and Deceptive Practices Act**

Lastly, SLS moves to dismiss the Quinns' ICFA claims in Counts IV and V of the amended complaint. SLS notes that in order to prevail on an ICFA claim, a plaintiff must show actual damages. SLS further points out that for purposes of the ICFA, a showing of "actual damages requires that the plaintiff suffer actual pecuniary loss." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739

(7th Cir. 2014) (quotation marks omitted). According to SLS, the Quinns have failed to sufficiently allege pecuniary harm.

I agree. Although the Quinns' amended complaint does allege pecuniary harm in various places, the allegations are conclusory.[3] In their briefing on SLS's motion to strike, the Quinns additionally claim that they have a good-faith basis to believe that SLS charged all class members (including themselves), an $11.35 "property inspection fee" each time an inspector visited a debtor's home. *See* Pls.' Resp. to Mot. to Strike at 13. These fees, however, are not mentioned in the amended complaint. The Quinns also contend that the amended complaint sufficiently alleges pecuniary harm because it includes a request for attorney's fees and costs. However, Illinois courts have squarely held that attorney's fees may constitute pecuniary harm in the context of an ICFA claim only where a defendant's actions are alleged to have

---

[3] The parties do not address the pleading standard that applies to the Quinns' ICFA claim. While it is clear that federal pleading standards apply in this case, *see, e.g.*, *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008), it is not immediately evident whether ICFA claims are subject to the requirements of Rule 8 or Rule 9. Rather, which of the standards applies depends on whether the claim alleges deceptive conduct or simply unfair conduct. *See, e.g.*, *Bartucci v. Wells Fargo Bank N.A.*, No. 14 CV 5302, 2015 WL 6955482, at *4-5 (N.D. Ill. Nov. 10, 2015). "When a[n ICFA] claim alleges an unfair practice, the relaxed pleading standards of Rule 8 ... govern." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). However, where fraudulent activity is alleged, Rule 9(b) applies. *Id*. In this case, it is immaterial because even under Rule 8, the amended complaint's allegations regarding pecuniary harm are insufficient.

caused the plaintiff to become involved in litigation with *third parties*. *See, e.g.*, *Tolve v. Ogden Chrysler Plymouth, Inc.*, 324 Ill. App. 3d 485, 491, 755 N.E.2d 536, 541 (2001). The Quinns cite no authority for the proposition that the pecuniary harm requirement can be satisfied by seeking attorney's fees in the same suit in which the ICFA claim is alleged. Indeed, the sole case that the Quinns cite, *In re Price*, 103 B. R. 989, 996 (Bankr. N.D. Ill. 1989), did not involve a claim under the ICFA at all.

I therefore grant the motion to dismiss Counts IV and V of the amended complaint. The Quinns may amend the complaint to include more specific allegations of pecuniary harm if they have a good faith basis for doing so.

## III.

In addition to seeking dismissal of the Quinns' substantive claims, SLS also moves to strike the class allegations in Counts I and IV of the amended complaint. The Quinns' proposed class consists of:

> (1) all consumers in Illinois, Indiana, and Wisconsin, (2) whose home loans SLS began servicing after the loans were in default, (3) where SLS had written notice that the consumer was represented by an attorney, (4) where SLS sent an "Independent Field Inspector" to the consumer's home, (5) who left a door hanger containing a slip of paper requesting that the consumer call a number for collections; and (6) where at least one such "Independent Field Inspector" visit occurred on or after a date one year prior to the filing of this action.

Am. Compl. ¶ 57.

SLS argues that Count I's class action allegations should be stricken because the proposed class cannot meet the commonality or predominance requirements of Fed. R. Civ. P. 23. According to SLS, adjudicating the § 1692c(a)(2) claim on a class-wide basis would require mini-trials regarding, *inter alia*, whether SLS received written notice that the class members was represented by counsel, whether SLS attempted to communicate with the class member after receiving notice of representation, and whether SLS first attempted to contact the class member's attorney.

At this stage, SLS's motion is premature. Although Federal Rule of Civil Procedure 23(c)(1)(A) provides that a court must determine whether to certify a class "[a]t an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), "most often it will not be 'practicable' for the court to do that at the pleading stage." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295–96 (N.D. Ill. 2014) (quotation marks, brackets, and ellipsis omitted). "If the plaintiff's class allegations are facially and inherently deficient, for example, a motion to strike class allegations ... can be an appropriate device to determine whether [the] case will proceed as a class action." *Id.* (quotation marks omitted). "If, on the other hand, the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature." *Id.* (quotation marks omitted).

As the Quinns point out, the potential problems attending litigation of their § 1692c(a)(2) claim on a class-wide basis are difficult to ascertain without knowing what kind of information SLS has about its contacts vis a vis potential class members. SLS may renew its challenge at the certification stage. For now, however, discovery should proceed.

Finally, since Counts IV and V have been dismissed, it is unnecessary to address SLS's motion to strike the class action allegations pertaining to those counts. Accordingly, SLS's motion to strike is denied.

IV.

For the reasons above, SLS's motion to dismiss is granted in part and denied in part. SLS's motion to strike is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: August 11, 2016

21