```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION


THOMAS QUINN and THERESA        )
QUINN, individually and on      )
behalf of a class of            )
similarly situated persons,     )
                                )
          Plaintiffs,           )
                                )
     v.                         )    No. 16-cv-2021
                                )
SPECIALIZED LOAN SERVICING,     )
LLC,                            )
                                )
          Defendant.            )
```

Memorandum Opinion and Order

In this action, plaintiffs Thomas and Theresa Quinn allege that defendant Specialized Loan Servicing, LLC ("SLS"), a home loan servicer, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, when the company's agents left allegedly misleading door hangers at their home and at the homes of similarly situated consumers in Illinois, Wisconsin, and Indiana. Before me is plaintiffs' motion to certify two separate classes. The first class ("Class A") plaintiffs seek to represent pertains to the alleged violations of 15 U.S.C. § 1692c(a)(2) raised in Count I of their complaint. According to plaintiffs, Class A would consist of:

    (1) all consumers in Illinois, Indiana, and Wisconsin;
    (2) whose home loans SLS began servicing after the loans were in default;

> (3) where SLS had written notice that the consumer was represented by an attorney;
> (4) where SLS sent an "Independent Field Inspector" to the consumer's home who left a door hanger containing a slip of paper requesting that the consumer call a number owned by SLS; and
> (5) where at least one such "Independent Field Inspector" visit occurred on or after a date one year prior to the filing of this action [on February 8, 2016].

The second class ("Class B") plaintiffs seek to represent relates to the violations of 15 U.S.C. § 1692e(10) and (11) alleged in Count II of the complaint. According to plaintiffs, this class would consist of:

> (1) all consumers in Illinois, Indiana, and Wisconsin;
> (2) whose [home] loans SLS began servicing after the loans were in default;
> (3) where SLS caused an "Independent Field Inspector" to visit the consumer's home and leave a door hanger with the same or substantially the same notice as the notice attached hereto as *Exhibit A*; and
> (4) where at least one such visit occurred on or after a date one year prior to the filing of this action [on February 8, 2016].

The notice attached to plaintiffs' motion as Exhibit A reads: "At the request of Specialized Loan Service, an Independent field Inspector called on you today. Please contact Specialized Loan Servicing at 1-800-306-6062. Thank you." For the reasons that follow, I grant plaintiffs' motion with respect to both classes.

To be entitled to class certification, a plaintiff must demonstrate by a preponderance of the evidence that all applicable criteria outlined in Federal Rule of Civil Procedure 23 are met. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018);

2

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015). Rule 23(a) sets forth four threshold requirements that every proposed class must satisfy:

> (1) the class is so numerous that joinder of all members is impracticable (numerosity);
> (2) there are questions of law or fact common to the class (commonality);
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and
> (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation).

*Chicago Teachers Union*, 797 F.3d at 433 (quoting Fed. R. Civ. P. 23(a)). In addition to meeting Rule 23(a)'s prerequisites, a proposed class must also satisfy the requirements of at least one of the categories of class actions set forth in Rule 23(b). Rule 23(b)(3), which plaintiffs invoke here,[1] permits class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

---

[1] Plaintiffs also move for certification under Rule 23(b)(2), which concerns conduct that is generally applicable to a class such that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," based on their request for declaratory relief in Counts I and II. Because plaintiffs primarily seek monetary rather than equitable relief, however, 23(b)(2) certification is not appropriate. *Burke v. Local 710 Pension Fund*, No. 98C3723, 2000 WL 336518, at *5 (N.D. Ill. Mar. 28, 2000).

Rule 23 gives district courts "broad discretion" in determining whether the requirements for certification are met. *Riffey v. Rauner*, 910 F.3d 314, 318 (7th Cir. 2018) (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)).

There is no dispute that plaintiffs meet two of Rule 23(a)'s four threshold criteria. Drawing from SLS's preliminary discovery responses, plaintiffs estimate that their proposed Class A would consist of at least 248 putative members and that Class B, as proposed, would consist of approximately 2,418 members. While these figures may not be exact, they are substantial. Indeed, these estimates are large enough that the impracticality of individually joining each class member to this suit is obvious, even if the classes turn out to be smaller than expected after further discovery. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."); *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009) ("In order to show numerosity, a plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates."). Plaintiffs easily meet the numerosity requirement, and SLS does not claim otherwise.

With respect to the adequate representation prong, there also is no dispute. Rule 23 requires federal courts to conduct the adequacy inquiry to protect against "conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Class representation is deemed fair and adequate "where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010). Plaintiffs have retained experienced counsel and have demonstrated their interest in the outcome of this suit. SLS has neither challenged the adequacy of class counsel nor identified any conflicts that would prevent adequate representation. I therefore find this requirement satisfied.

The parties do lock horns over the commonality requirement, but this dispute is easily resolved in plaintiffs' favor. To demonstrate commonality, plaintiffs need only show that there are "one or more common questions of law or fact that are capable of class-wide resolution and are central to the [] validity" of their claims. *Beaton*, 907 F.3d at 1026; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do." (internal

quotation marks and alterations omitted)). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

In the present case, the claims at the center of the two proposed classes "all derive from a single course of conduct"—namely SLS's practice of delivering (through an agent) door hangers to the properties of debtors in default, prompting the debtors to contact SLS. *Id.; see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (commonality requirement met where "defendants [] engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents"). From this single course of conduct, several common questions emerge including, but not necessarily limited to, whether the door hangers constituted debt communications, whether the door hangers should have identified that they were from a debt collector, whether the door hangers were misleading, and whether it was lawful to deliver the door hangers to consumers represented by counsel. The claims of the putative class members in proposed Class A and Class B "will rise or fall on the resolution of th[ose] question[s]." *Suchanek,* 764 F.3d at 757. Because each class count turns on the legality of SLS's standard door hanger, a class-wide proceeding is likely to "generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis

6

omitted) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

The other Rule 23(a) requirement which SLS challenges is typicality. Similar to the commonality inquiry, Rule 23(a)'s typicality analysis seeks to ensure that named plaintiffs' claims "have the same essential characteristics as the claims of the class" they seek to represent. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993)). A claim is sufficiently typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and if it is "based on the same legal theory." *Id.* (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Individuals with "idiosyncratic or possibly unique" claims are not appropriate class representatives. *Suchanek*, 764 F.3d at 758. This does not mean, however, that there can be no factual differences between the named plaintiffs' claims and the claims of other class members. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Here, plaintiffs received door hangers from SLS that they contend violated the FDCPA in several ways, and they seek to represent others who received the same door hangers and encountered the same alleged violations. Despite these essential similarities, SLS argues that plaintiffs' claims are not typical of the classes

7

they seek to represent because the door hangers that plaintiffs received were not initial communications from SLS and because one of the plaintiffs, Thomas Quinn, unlike some potential class members, called the phone number provided on the door hangers. These factual distinctions do not render plaintiffs' claims atypical. That plaintiffs' door hangers came after their first communication from SLS does not change that their claims arise from the same course of conduct by SLS and under the same theories of liability. *See, e.g.*, 15 U.S.C. § 1692e(11) (regulating both initial and subsequent communications). Similarly, because FDCPA liability is based on whether an unsophisticated consumer would be misled, rather than whether class members were actually misled, *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009), the fact that some class members may not have called the phone number on the door hanger, as Thomas Quinn did, does not defeat typicality. Plaintiffs satisfy the typicality requirement.

The primary dispute between the parties is whether the requirements of Rule 23(b)(3) are met. To determine whether Rule 23(b)(3) certification is appropriate, a district court must conduct two inquiries. First, the court must assess whether the common questions existing between the class members predominate over individual questions. Second, the court must consider whether class treatment of the controversy is superior, in terms of fairness and efficiency, to other methods of adjudication.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance is a qualitative rather than a quantitative concept." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). It is not a question of "counting noses" to determine "whether there are more common issues or more individual issues." *Id.* Rather, predominance is a question of "relative importance." *Id.* "[A] common question predominates over individual claims if 'a failure of proof on the [common question] would end the case' and the whole class 'will prevail or fail in unison.'" *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)).

That is the case here. If plaintiffs fail to show that the door hangers are debt collection communications, for instance, that shortcoming would end their class action claims. Likewise, if plaintiffs cannot show that the door hangers would mislead an unsophisticated consumer, Class B's claims will fail in unison. The same goes for members of Class A if plaintiffs are unable to show that SLS sent the notices to debtors it knew to be represented by counsel. Because these common questions are critical to determining SLS's liability and the outcome of this litigation, the predominance requirement is met. *See id.* at 378-79.

9

SLS disagrees and warns that various individual fact questions—whether class members' loans were consumer loans and were in default, whether class members were represented by counsel, whether class members received an initial communication before the door hanger at issue, whether inspections occurred, and whether plaintiffs experienced actual damages—will predominate over the common questions. None of these arguments are persuasive. SLS's default and loan status concerns are addressed by plaintiffs' proposed class definitions, which specify that class members must have "home loans" that "SLS began servicing after the loans were in default." This is information that SLS's Rule 30(b)(6) deponent admitted the company receives when it acquires an account from a prior servicer. Ward Dep. at 85-88. There will be no need for the court to pore over thousands of individual loan documents to assess the relationship between SLS and the members of the proposed classes. *See Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 538 (7th Cir. 2003) (a party is a debt collector under the FDCPA if it treats a debt as being in default when acquired, even if it is mistaken about the actual status of the debt).

SLS's argument that determining which class members were represented by counsel will predominate over common questions also rings hollow. The definition for Class A limits class members to those who SLS knew to be represented by counsel because it had written notice. It is true that some class members may have waived

their rights to 15 U.S.C. § 1692c(a)(2) protection or may no longer have been represented by counsel at the time they received door hangers. These individual questions should be easily resolved from SLS's records. Regardless, they are not likely to predominate over the questions common to the class.

SLS's other arguments against predominance merit little discussion. Whether class members received doors hangers as a first or subsequent communication is not critical to determining liability under 15 U.S.C. § 1692e(10) and (11), so this is not an issue that will predominate over the common questions, nor is it a concern that is appropriately addressed at this stage. *See Bell*, 800 F.3d at 376 ("[A] court may not resolve merits questions at the class certification stage."); *Parko*, 739 F.3d at 1085 ("How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified."). Whether and when inspections occurred is similarly nonessential to determining SLS's liability. What matters is whether potential class members received the door hangers during the class period, and whether the door hangers violated the FDCPA. Finally, SLS's individualized damages argument fails. Assessing the degree to which individual class members were harmed by SLS's conduct is a remedy concern. It is not a reason for denying certification on the issue of SLS's liability. *See Mulvania*, 850 F.3d at 859 (district court erred "when it ruled that class certification was precluded based on the

need for damages to be assessed individually" because the court could have bifurcated the case into a liability phase and a damages phase); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("Often...there is a big difference from the standpoint of manageability between the liability and remedy phases of a class action.").

The final hurdle for plaintiffs is Rule 23(b)(3)'s superiority requirement. The superiority inquiry requires courts to assess the fairness and efficiency of class adjudication "with an eye toward 'other available methods.'" *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015) (quoting Fed. R. Civ. P. 23(b)(3)). Class actions are "superior where potential damages may be too insignificant to provide class members with incentive to pursue [their] claim[s] individually." *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008) (internal quotation marks and citation omitted); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The goal at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Class actions are also desirable where collective treatment "would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated." *Amchem*,

521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note).

Here, plaintiffs' proposed classes potentially include more than 2,500 consumers with small value claims resulting from the same conduct. Rather than separately adjudicating hundreds of very similar individual cases, the most efficient method for resolving these claims is a class action. Class treatment will also ensure that lack of incentive or time and resource concerns do not dissuade or prevent similarly situated consumers from pursuing their claims. SLS argues that class treatment would not be fair to class members because the FDCPA's statutory damage cap could limit their recovery. "The FDCPA, however, explicitly contemplates class actions for statutory damages, 'without regard to a minimum individual recovery.'" *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 321 (N.D. Ill. 1995) (quoting 15 U.S.C. § 1692k(a)(2)(B)). SLS's speculation that some class members might prefer to individually litigate their claims is not a ground for denying class certification, especially where, as here, class members would be able to opt out under Rule 23(c)(2)(B)(v). A class action is clearly the superior method for adjudicating these claims.

For the foregoing reasons, plaintiffs' motion for class certification is granted. Class A and Class B may proceed under the definitions outlined above.

**ENTER ORDER:**

_____
Elaine E. Bucklo
United States District Judge

Dated: March 8, 2019